In the matter of the Appeal of BASIL B. G. BLACKSTONE to THE BOARD OF ADJUSTMENT under an ordinance of the CITY OF WILMINGTON, entitled "An Ordinance to Regulate and Restrict the Location of Buildings and Structures, and the Use of Buildings, Structures and Land, the Height and Size of Buildings and Other Structures, the Areas and Dimensions of Open Spaces on Building Lots and Density of Population."

(*February* 11, 1937.)

LAYTON, C. J., RICHARDS and SPEAKMAN, J. J., sitting.

*Howard Duane* for petitioner, Basil B. G. Blackstone.

*James R. Morford,* City Solicitor, and *Thomas Herlihy, Jr.,* Assistant City Solicitor, for the Mayor and Council of Wilmington.

*Harry K. Hoch* for John H. Mullin, a tax payer opposing the petition.

*John J. Morris, Jr.,* for Medical Arts Building, Inc., a tax payer opposing the petition.

Superior Court for New Castle County, No. 178, March Term, 1934:

SPEAKMAN, J., delivering the opinion of the Court:

The Constitutional question raised by the petitioner in his petition for a *Writ of Certiorari* will be considered first. It is:

That *Section Ten* of the said Ordinance is unconstitutional and void as applied to the petitioner in the present case, in that (1) it deprives the petitioner of his property without due process of law; (2) it is an attempt to take property of the petitioner for a public purpose without compensation; (3) it denies to petitioner the equal protection of the law.

Our *Constitution* in its *Bill of Rights* (*Article* 1, § 7) declares that no person shall be deprived of his property "unless by the judgment of his peers or by the law of the land," and the *Fourteenth Amendment* to the *Constitution of the United States* declares that no State shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

But notwithstanding the language of these constitutional provisions the State is not restricted in its right to exercise its police power for the protection of the health, morals, safety or general welfare of the community. This power belongs exclusively to the State in which it is inherent without reservation, there has been no grant of it by the State to the Federal Government, and it finds its expression in legislative action. As has been said it is "the most comprehensive and therefore the vaguest of governmental powers." *Freund Police Power*, § 1. It is a power difficult to define but extensively invoked. As was said in *Mayor and Council of Wilmington v. Turk*, 14 *Del. Ch.* 392, 129 *A.* 512, 515:

"It is a power which rests upon no express constitutional grant. It is a power evolved by judicial decision and is rooted in the conception that men in organizing the state and imposing upon their

creature limitations for the protection of the citizen, did not intend thereby to secure to the individual citizen a right to obstruct the state in the pursual of such salutary measures of control as are reasonably calculated to protect society generally in its peace, good order, safety, health and morals."

It must be conceded that the State in the exercise of this power may regulate the construction, alteration, repair and use of buildings in the interest of health and safety, and that by appropriate legislative action this power to regulate within its corporate limits can be delegated to the legislative body of a municipal corporation, for the purpose of assuring to the occupants of buildings used for residential purposes proper and sufficient safeguards for the promotion of the health and safety of the occupants; and in furtherance of such purpose may require areas or open spaces to provide such building with light and air and adequate ventilation, and also to provide means of egress or ingress to and from such buildings in case of fire or other casualties, provided, of course, such regulations are reasonable, general, and impartial in their operation, and in conformity with specific restrictions, rules and limitations.

This power to so regulate can be exercised consistently with the provisions of not only the *Constitution* of this State, but also with the provisions of the *Constitution of the United States*. In the case of *Village of Euclid v. Ambler Realty Co.*, 272 *U. S.* 365, 47 *S. Ct.* 114, 118, 71 *L. Ed.* 303, 54 *A. L. R.* 1016, the Court said:

"There is no serious difference of opinion in respect of the validity of laws and regulations fixing the height of buildings within reasonable limits, the character of materials and methods of construction, and the adjoining area which must be left open, in order to minimize the danger of fire or collapse, the evils of overcrowding and the like, and excluding from residential sections offensive trades, industries and structures likely to create nuisances."

Provisions for the specific power to so regulate to the extent therein contained has now been made by the *Con-*

*stitution* of this State, by the *Amendment* to *Article* 2 thereof.

No suggestion has been made by any of the parties interested that these proceedings are in any way affected by the *Constitutional Amendment,* the repeal of *Chapter* 114, *Volume* 33, and the passage of *Chapter* 22, *Volume* 39, or the readoption of the *Building Zone Ordinance,* and for that reason the effect thereof, if any, has not been considered in these proceedings.

The petitioner contends that the *Enabling Act* of 1923 is unconstitutional because of the language contained in *Section* 7 thereof (*Section* 8 of the *Act* of 1934), which is as follows:

"Such local legislative body shall provide for the appointment of a Board of Adjustment and in the regulations and restrictions adopted pursuant to the authority of this Act shall provide that the said Board of Adjustment may, in appropriate cases and subject to appropriate conditions and safeguards, make special exceptions to the terms of the ordinance in harmony with its general purpose and intent and in accordance with general or specific rules therein contained. * * *

"To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done."

And that the *Ordinance* of 1924 is void because of the following language contained in *Section* 14 thereof:

"Such Board may in particular cases where unnecessary hardship would result, authorize variance from the terms of the ordinance in harmony with its general purpose, intent, and with public interest."

The petitioner contends that *Section* 10 of the *Ordinance* is void as applied to the petitioner in the present case in that (1) it deprives the petitioner of his property without due process of law, (2) it is an attempt to take property for a public purpose without compensation, and (3) it denies to the petitioner the equal protection of the law.

The validity of *Section* 10 of the *Ordinance* is dependent upon the constitutionality of the *Enabling Act*. In these proceedings there has been no suggestion or indication that there is any conflict between the *Ordinance* and *Enabling Act*, which in any way could have any application in the instant case.

In support of his contention the petitioner argues that the Legislature of this State had no authority to set up a board such as the Board of Adjustment without providing for restrictions, rules or limitations under which the Board should act in reaching its conclusions, and that in so doing it has unconstitutionally delegated legislative powers to the Board, with the result that the entire *Enabling Act* is unconstitutional, and the Ordinance adopted pursuant thereto is void.

He contends that the provisions in the *Enabling Act* granting to the Board of Adjustment authority to authorize variances has such a material relation to the other portions of the act as to modify, restrict or extend the application of the other portions to such an extent as to render the entire *Enabling Act* unconstitutional.

In support of his contention that the *Enabling Act* in its entirety is unconstitutional, the petitioner relies largely on the case of *Jack Lewis, Inc., v. Mayor and City Council of Baltimore,* 164 *Md.* 146, 164 *A.* 220, approved by the Court of Appeals of Maryland in the case of *Sugar v. North Baltimore Methodist Protestant Church,* 164 *Md.* 487, 165 *A.* 703, 705.

The precise question raised by the petitioner with respect to the said *Enabling Act* has not been decided by the Courts of this State, and notwithstanding the fact that in numerous other States there are acts containing a provision permitting variances in identical or substantially the same language as contained in the Delaware act, the Court

has not had its attention directed to any case where any Court has gone to the extent urged by the petitioner.

The Courts in other jurisdictions have on numerous occasions been called upon to consider the validity of provisions in *Zoning Laws* and *Ordinances* authorizing or permitting variances. The decisions of such courts are in decided conflict.

One line of authorities holds that the words "practical difficulties," "unnecessary hardship," "substantial justice," as contained in such provisions authorizing variances which are to furnish a guide or to mark limits or control the exercise of the power conferred on the board, are too general and indefinite to furnish a sufficient rule or measure for the action of the Board, and that therefore the power given to the Board constitutes an unconstitutional delegation of legislative power.

In the case of *Sugar v. North Baltimore Methodist Protestant Church, supra,* the Court of Appeals in Maryland held *Sub-section G-3* of *Section (Par)* 32, and *Sub-section B* of *Section (Par)* 32 of the *Zoning Ordinance of the City of Baltimore,* invalid. The first Sub-section provided that the Board of Zoning Appeals should have the power: (g) 3, To authorize upon appeal in specific cases such variance from the terms of this Ordinance as is necessary to avoid arbitrariness and so that the spirit of the Ordinance shall be observed and substantial justice done. The second sub-section bestowed upon the Board the discretion to: (b) Grant a permit where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of any of the provisions of this Ordinance.

Subject to its holding with respect to *Sub-section G* 3 of *Section* 32, and *Sub-section B* of *Section* 32, the Court in its opinion said:

"The legality of the enactments of the zoning statute rests upon

its being a valid exercise of the police power, whose fundamental principle is that it is for the general or common good with respect to some matter of public welfare in relation to the safety, order, and morals of the community. In the effort to bring about the greatest good of the greatest number, collective communal action is indispensable and, therefore, the state requires, and may lawfully exact, of every individual that he submit to such restraints in the exercise of his liberty or of his rights of property as may, under the state and federal Constitutions, reasonably be necessary for the common good. *State v. Hyman,* 98 *Md.* 596, 614, 57 *A.* 6, 64 *L. R. A.* 637, 1 *Ann. Cas.* 742. It is upon this principle that the general terms of the ordinance at bar are sustained. The boundaries of the districts and the regulatory measures prescribed with respect to the property within these districts are supported upon the theory of their uniform, equal, and universal application within the territory affected."

In *Welton v. Hamilton,* 344 *Ill.* 82, 176 *N. E.* 333, 337, the Court said:

"That part of *Section* 3 which purports to confer upon the board of appeals authority to vary or modify the application of the provisions of the ordinance where there are practical difficulties or unnecessary hardship in carrying out the letter of the ordinance, is an unconstitutional delegation of legislative authority. The statute gives no direction, furnishes no rule, and provides no standard for determining what are practical difficulties or unnecessary hardships which justify setting aside the provisions of the ordinance and varying or modifying their application, but leaves those questions to be determined by the unguided and unlimited discretion of the board. 'Practical difficulties' and 'unnecessary hardship' are not well defined and understood terms having a specific meaning which would enable an average person of ordinary intelligence to apply the tests of 'practical difficulty' and 'unnecessary hardship' to any particular case."

In this case the Court held an *amendment* to *Section* 3 of the *Ordinance* conferring power on a Board of Appeals to vary the application of the provisions of the *Ordinance,* unconstitutional. The remaining Provisions of the *Ordinance* were upheld.

The case of *Gulf Refining Co. v. City of Dallas* (*Tex. Civ. App.*), 10 *S. W.* (2*d*) 151, also relied upon by the petitioner goes no further than the case of *Sugar v. North Baltimore Methodist Protestant Church, supra,* in holding the provision permitting variance unconstitutional. The validity of the remaining provisions were upheld.

The case of *Roman Catholic Archbishop v. Baker,* 140 *Or.* 600, 601, 15 *P.* (2d) 391, the only other case relied on by the petitioner on this point does not sustain the contention of the petitioner. In that case the validity of the ordinance of the City of Portland was before the Court. There was no provision in the ordinance as to how or where a site for a school might be located. The Court held the ordinance invalid in so far as giving city officials arbitrary power in respect to the erection of school buildings in residential districts. The ordinance under consideration had been held constitutional in certain particulars by the same Court in the earlier case of *Kroner v. City of Portland,* 116 *Or.* 141, 240 *P.* 536.

The other line of authorities, and the greater in number, hold that the grant of the power to a Board "To authorize upon appeal in specific cases such a variance from the terms of the Ordinance as will not be contrary to the public interest where owing to specific conditions a literal enforcement of the provisions of the Ordinance will result in unnecessary hardship, and so that the spirit of the Ordinance shall be observed and substantial justice done" or a grant of substantially the same power by similar language, does not amount to an unlawful delegation of legislative power to an administrative body.

In the following cases the language of the provision in the Statute or Ordinance in question permitting variances, was identical with or very similar to the language of the provision in the Delaware act.

In the case of *L. & M. Investment Co. v. Cutler,* 125 *Ohio St.* 12, 180 *N. E.* 379, 382, 86 *A. L. R.* 707, the Court said:

"The chief question therefore is whether the provision of the zoning ordinance authorizing the board of appeals to vary applications in case of 'unnecessary hardships' is constitutional—whether it constitutes a delegation of legislative power. * * *

"Eighty years ago in *Cincinnati, W. & Z. R. Co. v. Commissioners, supra* [1 *Ohio St.* 77], discussing the question of delegation of power and the conferring of authority for the execution of a law upon an administrative agency, Judge Ranney said: (at page 88 of Ohio St.) 'The true distinction, therefore, is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made.'

"And in *Yee Bow v. City of Cleveland,* 99 *Ohio St.* 269, 124 *N. E.* 132, 12 *A. L. R.* 1424, this court unanimously held that an ordinance imposing upon an administrative officer (as a prerequisite to the issuance of a license) the duty of ascertaining facts relating to public health did not confer legislative power upon such officer in a constitutional sense, although resort might be had to the courts if his conduct should prove to be arbitrarily exercised or palpably unwarranted. * * * Plaintiff in error contends that no definite standard was fixed in the ordinance for determining what are the 'practical difficulties' or 'unnecessary hardships' resulting to the owner of the property who desired to be relieved from the strict letter of the ordinance. Since we have no bill of exceptions, it will be presumed that unnecessary hardships imposed upon the applicant were fully established by the evidence, and that is the import of the finding by the Court of Appeals in its journal entry. Manifestly the legislative body cannot fix any adequate standard or rule that would fit every individual case of hardship. That is impossible; and therefore the legislative body has confined the determination of that feature to an administrative agency—in this case the board of appeals—as a fact-finding body which could determine whether in any specific case unusual hardships might result if the strict letter of the ordinance were complied with."

In *Sundeen v. Rogers,* 83 *N. H.* 253, 141 *A.* 142, 146, 57 *A. L. R.* 950, the Court said:

"As the statute here involved is plain and specific in its provisions, leaving nothing open to the mental processes of the board save the finding of the facts in the particular case, there is nothing upon which to base a claim that the board is vested with arbitrary power. Authority to grant a variance to one party and to deny it 'to another under similar circumstances' is not conferred. 'The provision was not intended as a grant of arbitrary power, but only as the imposition of a duty upon those officers, to be performed by an impartial exercise of a reasonable discretion. There can be no doubt of the Legislature's power to delegate the duty to these officers.' *State v. Cohen,* 73 *N. H.* 543, 547, 63 *A.* 928, 930. See, also, *Hammond v. Board of Appeal,* 257 *Mass.* 446, 154 *N. E.* 82."

In *Zimmerman v. O'Meara,* 215 *Iowa* 1140, 245 *N. W.* 715, 718, the Court said:

"The power may not be arbitrarily exercised and its exercise must be confined strictly within the limitations of the statute. *Prusik v.*

*Board of Appeal,* 262 *Mass.* 451, 160 *N. E.* 312, *supra; Bradley v. Board of Zoning Adjustment,* 255 *Mass.* 160, 150 *N. E.* 892.

"The reservation of this power of variance and adjustment and the delegation thereof to a special board are not unconstitutional. *Gorieb v. Fox,* 274 *U. S.* 603, 47 *S. Ct.* 675, 71 *L. Ed.* 1228, 53 *A. L. R.* 1210; *Sundeen, v. Rogers,* 83 *N. H.* 253, 141 *A.* 142, 57 *A. L. R.* 950; *Harden v. City of Raleigh,* 192 *N. C.* 395, 135 *S. E.* 151.

"If the reasonableness of the classification established by the ordinance or of the exception or variance granted by the board of adjustment is fairly debatable, and not clearly arbitrary, the judgment of the local authorities will not be disturbed by the-courts. *Zahn v. Board of Public Works,* 274 *U. S.* 325, 326, 47 *S. Ct.* 594, 71 *L. Ed.* 1074. * * *

"But the statute does not by language or inference, confer arbitrary power upon the board. On the contrary, it lays down conditions and limitations within which the board must confine itself. The power of the board is to grant such exceptions and variances in specific cases as will bring them within, not to take or leave them out of the spirit, intent, and general purpose of the ordinance of zoning."

In *Spencer-Strula Co. v. City of Memphis* (1927), 155 *Tenn.* 70, 290 *S. W.* 608, 614, the Court said:

"It is contended for the plaintiff in error that the provisions of *subsection* 8 constitute an authorized delegation of legislative power to the administrative board. Provisions of such an ordinance authorizing an administrative board to permit departures from the requirements or the ordinance have been held to constitute an unconstitutional delegation of legislative power, when no sufficient measure or guide for the 'action of the administrative board is fixed in the ordinance. In the present case the administrative board is required to follow the 'fundamental purpose and intent' of the ordinance in every instance, and the board is not given such discretion as will amount to a delegation of the legislative power of the city government."

*In Re Dawson* (1928), 136 *Okl.* 113, 277 *P.* 226, 228, the Court said:

"The zoning ordinance does not unlawfully delegate legislative power to an administrative board by permitting such board to allow departures from requirements of the ordinance, because such board is required to follow the fundamental purpose and intention of the ordinance in every instance."

In *Junge's Appeal,* 89 *Pa. Super.* 543, the Court said:

"The board of appeals shall have the power in passing upon appeals to vary or modify any of the regulations or provisions of said ordinance in harmony with their general purpose and intent, and in accordance with general or specific rules therein contained, so that

the spirit of the ordinance shall be observed; the public health, the public safety, and the general welfare secured; and substantial justice done.  *  *  *

"The authority thus placed in the Board is not an arbitrary one. The discretion vested in the Board is subject to review if abused or not exercised in accordance with the provisions of the Act. The statute does not give the Board power to do whatever they feel inclined to, regardless of the provisions of the statute. *People ex rel. Cotton v. Leo,* [110 *Misc.* 519] 180 *N. Y. S.* 554.

"The strict letter of the ordinance may be departed from only where there are practical difficulties or unnecessary hardships in the way of carrying it out; and in such manner that the spirit of the ordinance may be observed, the public health, safety and general welfare secured and substantial justice done. No other considerations should enter into the decision."

In *Prusik v. Board of Appeal of Building Department,* 262 *Mass.* 451, 160 *N. E.* 312, 314, the Court said:

"The power to vary the application of the act is to be exercised sparingly. Exceptional circumstances alone justify relaxation in peculiar cases of the restrictions imposed by the statute. The dominant design of any zoning act is to promote the general welfare. The protection of health and the promotion of safety are salient factors. The stability of the neighborhood and the protection of property of others in the vicinity are important considerations. The financial situation or pecuniary hardship of a single owner affords no adequate ground for putting forth this extraordinary power affecting other property owners as well as the public. The only reason set out in the decision relates to the alleged disappointment of the particular landowner in finding out that her land is not available for business uses, but is just inside a residential zone. This is quite insufficient to constitute 'unnecessary hardship' or to involve 'practical difficulty.' "

The principle recognized by the Courts in the above cases has been followed for many years by the Courts in cases involving matters other than zoning. This principle is well stated in the annotation to the case of *State ex rel. Makris v. Superior Court,* 113 *Wash.* 296, 193 *P.* 845, 12 *A. L. R.* 1429. There the annotator said at *page* 1447 of 12 *A. L. R.*:

"It is also well settled that it is not always necessary that statutes and ordinances prescribe a specific rule of action, but, on the other hand, some situations require the vesting of some discretion in public officials, as, for instance, where it is difficult or impracticable to lay down a definite, comprehensive rule, or the discretion relates to the administration of a police regulation and is

necessary to protect the public morals, health, safety and general welfare, and in which he illustrates his conclusions by numerous cases."

■ In the consideration of this case it is the duty of the Court to follow the principle of construction that "Every presumption is in favor of the validity of an Act of the Legislature, and all doubts are resolved in support of the Act. In determining the constitutionality of an Act of the Legislature, courts always presume in the first place that the Act is constitutional." 1 *Lewis Southerland Statutory Construction.*

This principle of construction is fully recognized in this State. In *State v. Grier, 4 Boyce* (27 *Del.*) 322, 88 *A.* 579, 585, the Court said:

"It is hardly necessary to say that the courts of this state have uniformly held that an act of the Legislature, when attacked on constitutional grounds, should be declared valid if it is possible under the law to do so. No state has gone further than our own in upholding and carrying out the will of the people as expressed through legislative enactments."

■ Considering the objects sought to be accomplished and the reasoning of the Courts in other jurisdictions it clearly appears that as applied to the facts in the instant case the standards and guides contained in the *Enabling Act* are sufficiently definite to control the discretion of the Board of Adjustment in its power to vary the terms of the Ordinance. The words "unnecessary hardship," "spirit of the Ordinance" and "substantial justice," as contained in the Act, are words having meanings which are understandable to any person of average intelligence. The power granted to the Board can only be exercised within the spirit of the Ordinance impartially and with reasonable discretion. It is not an uncontrolled power to do as the Board desires, but is a circumscribed power to be exercised by the Board in accordance with evidence of physical facts and circumstances.

The other question raised by the petitioner in his petition for a *Writ of Certiorari* is:

That the decision of the Board of Adjustment is illegal for the reason that by such decision unnecessary hardship results to the petitioner, and that this Board failed to authorize a variance from the terms of the *Building Zone Ordinance* in harmony with its general purposes and intent, and with the public interest.

■■ No owner is entitled as a matter of right to have a variance from the terms of the Ordinance made for his benefit, and for that reason the refusal of the Board of Adjustment to make an order authorizing the variance asked by the petitioner cannot be modified by this Court, unless it appears that it is erroneous in law or the discretion of the Board has been arbitrarily exercised, or has no foundation in reason, or is otherwise illegal. This is apparent from the language of *Section* 7 of the *Act* of 1923 (*Section* 8 of the *Act* of 1934), which is so plain as to require no supporting authority. The material part is as follows:

Any person aggrieved by any decision of the Board of Adjustment may present to a Court of Record a petition duly verified setting forth such decision is "illegal" in whole or in part, specifying the ground of "illegality." The Court may reverse or affirm wholly or partly, or may modify the decision brought up for review.

The Courts of this State have in two instances reversed the decisions of the Board of Adjustment, and in each instance the ground of reversal was for illegality.

In the case of *Mayor, etc., of Wilmington v. Turk*, 14 *Del. Ch.* 392, 129 *A.* 512, 522, decided before the amendment to *Article* 2 of the *Constitution*, the Chancellor refused to enjoin the establishment of a private hospital in a Residence

"A" District for the reason that he was unable to see any connection between the establishment of such private hospital and "any proper object which the police power may legitimately serve." And in the recent case of *In re Ceresini,* 8 *W. W. Harr.* (38 *Del.*) 134, 189 *A.* 443, this Court held that the denial of the right to enclose a front porch of a house located in a Business "A" District, on the same side of a street and separated by one house from a row of stores facing on the same street and covering a considerable portion of the block, could not be sustained under the police power.

In each of these cases it was held, in substance, that the restrictions in the ordinance were unnecessary and unreasonable restrictions upon the use of private property in that they had no substantial relation to the public health, safety, morals or general welfare.

■■ The provisions of the *Building Zone Ordinance* requiring in Business "B" Districts rear yards for buildings used for residential purposes are no greater as to area than in any other district, are general, uniform and impartial in their operation upon the owners of property in Business "B" Districts, and have, as above stated, a substantial relation to the public health and safety of the people residing in such districts, and they are therefore not invalid. As it does not appear from the record returned by the Board of Adjustment, and the evidence heard in this Court, that the discretion of the Board of Adjustment had been arbitrarily exercised or had no foundation in reason, or was otherwise illegal, this Court had no jurisdiction to reverse or modify the decision of the Board of Adjustment.

There is no merit in either of the contentions of the petitioner.

The order of the Board of Adjustment is affirmed.